UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-80500-Civ-Marra

CURTIS BOZEMAN,

       Plaintiff,

v.

THE HURST LAW GROUP, P.L., a
Florida limited liability company, and
RONALD A. HURST, individually,

       Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM AND FOR LACK OF SUBJECT MATTER JURISDICTION, OR ALTERNATIVELY FOR SUMMARY JUDGMENT WITH INCORPORATED STATEMENT OF FACTS AND MEMORANDUM OF LAW

Defendants, THE HURST LAW GROUP, P.L., a Florida limited liability company ("HURST P.L." or "FIRM"), and RONALD A. HURST, individually ("HURST"), by and through their undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3), file this Motion to Dismiss for Failure to State a Claim and for Lack of Subject Matter Jurisdiction, or in the Alternative, for Summary Judgment pursuant to Rule 56, and in support state:

### I.      INTRODUCTION AND BACKGROUND.

Plaintiff was employed with Defendant HURST P.L. from April 19, 2008 until January 19, 2009. Despite never raising any claim regarding unpaid overtime, or other violations of the Fair Labor Standards Act ("FLSA") during his employment, Plaintiff filed the instant lawsuit on April 12, 2010, alleging that Defendants failed to pay him proper overtime for hours worked in excess of 40 hours in one workweek. *See* Amended

Complaint. Although electing to file an Amended Complaint after receiving Defendants' initial motion to dismiss, Plaintiff still attempts to support his claim by filing the most bare-boned complaint comprised only of naked legal conclusions and devoid of any material factual averments. For the reasons set forth below, this Court should dismiss Plaintiff's claims for failure to state a claim.   Alternatively, the Court should grant Defendants motion for summary judgment for lack of subject matter jurisdiction.

Plaintiff's Complaint alleges a single count pursuant to the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201 et seq.) for alleged overtime violations, one against the law firm and one against the individual Defendant. Plaintiff seeks back wages, liquidated damages, prejudgment interest, attorneys' fees, and litigation expenses. (*See generally, Amended Complaint*).

In support of this motion, Defendants rely on the Affidavits of Ronald Hurst, the sole member of the Firm, and the Firm's bookkeeper, Frances Waite.  The foregoing affidavits set forth that Hurst P.L. is a small law firm with one office in Lake Worth, Florida, that has not grossed more than $500,000 per year in 2008 or 2009 and thus is not subject to the FLSA.  The firm is also not subject to the FLSA because it does not have two or more employees engaged in interstate commerce, and is a local business only transacting and seeking to transact business in South Florida. Moreover, at no time relevant hereto did Plaintiff himself engage in substantial part in interstate commerce. These simple facts warrant summary judgment in the Defendants' favor.

## II. STATEMENT OF MATERIAL UNDISPUTED FACTS

The Statement of Undisputed Material Facts (cited hereinafter as "Facts ¶ ___") has been set forth herein. The Affidavits of Ronald Hurst and Francis Waite have been

filed contemporaneously herewith and are attached hereto as Exhibit 1 and as Exhibit 2, respectively.

1.      Defendant Hurst P.L. is a local criminal law firm created on April 6, 2008, with one location in South Florida. (*Affidavit of Ronald Hurst* ¶ 2.  During the time relevant to this matter, Defendant Hurst P.L. had four types of employees, one lawyer (i.e., Hurst), a part-time business manager, a secretary, and two paralegals, one of which was the Plaintiff. (*Affidavit of Ronald Hurst* ¶ 2).

2.      Defendant Hurst is a licensed Florida attorney and the sole member of the Firm. Id. ¶3.   Neither Hurst P.L. nor Hurst has ever sought to expand the existing business outside the State of Florida.  Neither Hurst P.L. nor Hurst is authorized or licensed to practice law in states other than the State of Florida. (*Affidavit of Ronald Hurst* ¶ 3).

3.      Defendant Hurst P.L. is not a law firm engaged in interstate commerce for purposes of the Fair Labor Standards Act.  The Firm does not engage in any advertising outside the South Florida area and with the exception of one case in the last two years, all of the cases handled by the Firm have been in Florida.    Currently, the Firm has no existing matters or clients outside the State of Florida.    Thus, Defendants almost exclusively perform legal work here to the local community in South Florida, and do not produce any goods or provide any services outside the local South Florida area, nor have they ever sought to do that. (*Affidavit of Ronald Hurst* ¶ 4).

4.      Plaintiff worked for the Firm from April 19, 2008 to January 19, 2009, and his responsibilities included "litigation paralegal, clerical and related duties." At no time during Plaintiff's employment was he engaged substantially in interstate commerce as is required under FLSA.  Plaintiff was one of the Firm's paralegals who assisted the Firm in providing legal services to the Firm's clients, which were Florida clients or concerned matters pending in the Florida courts. Id.  At all times during Plaintiff's employment, his employment was strictly limited to Hurst P.L. and at no time was he engaged in any substantial way in interstate commerce during his employment. His tasks included answering the phone, typing, handling and speaking with clients and other local attorneys, scheduling and filing pleadings in local courts, and other non-manual work directly related to the general law office operations.  Thus, currently and during the time period relevant to this matter, none of the other employees of Defendant Hurst P.L. are or have been substantially engaged in interstate commerce or provide goods in interstate commerce. (*Affidavit of Ronald Hurst* ¶ 5).

5.      As the Firm's criminal law practice was almost exclusively based in South Florida, any use by Plaintiff of any instrumentalities in interstate commerce was insubstantial and de minimis. The Plaintiff did not engage in the production of any goods for commerce, did not directly participate in the actual movement of persons or things through interstate commerce, and did not use the instrumentalities of interstate commerce in any substantial way, such as interstate telephone, facsimile, mail or travel because the

legal services provided by Hurst, individually, and by the Firm were in the local South Florida area during the relevant time period. (*Affidavit of Ronald Hurst* ¶ 6).

6.      Any products or instrumentalities used by Plaintiff or the Firm in providing legal services to the Firm's clients were products purchased locally at retail stores here in South Florida or from local vendors. *Id.* Plaintiff did not order or purchase goods or supplies for the Defendants from another state. Plaintiff did not perform any functions that require the conclusion that he was engaged substantially in interstate commerce. (*Affidavit of Ronald Hurst* ¶ 7).

7.      As a paralegal, Plaintiff was called upon to assist the Firm and its sole member in the provision of legal services, but was not authorized to provide legal advice or services himself. Moreover, Plaintiff, at no time during his employment with the Firm, ever provided goods in the stream of commerce to any of the Firm's clients. (*Affidavit of Ronald Hurst* ¶ 8).

8.      The Firm's other employees, also did not engage in interstate commerce, did not engage in the production of goods for interstate commerce, did not handle, sell or otherwise work on goods or materials that had moved in or were produced for interstate commerce as defined by the FLSA, because the Defendants only purchased goods locally. Thus, during the time period relevant to this matter, none of the other employees of Defendant Hurst P.L. were substantially engaged in interstate commerce or provided goods in interstate commerce. (*Affidavit of Ronald Hurst* ¶ 9).

9.      During Plaintiff's employment, Defendant Hurst P.L. employed four other ministerial employees.  The other employees did work for Hurst P.L., and this work included part-time bookkeeping, secretarial work, and paralegal work on cases being handled by the Firm in South Florida for Florida clients. None of the Firm's employees, including the Plaintiff, engaged in interstate commerce, nor did they engage in any type of production of goods for interstate commerce, nor did they handle, sell, or otherwise work on goods or materials that had moved in the lines of interstate commerce or that were produced for interstate commerce. (*Affidavit of Ronald Hurst* ¶ 10).

10.      Defendant Hurst P.L. is not an enterprise engaged in interstate commerce for purposes of FLSA, because it did not have gross revenue that exceeded $500,000 in 2008 or 2009. The income tax returns attached to the Affidavit of Francis Waite are a true and accurate statement of the actual revenue that Hurst P.L. earned during the relevant time period. (*Affidavit of Francis Waite* ¶ 4).

11.      Defendant, Hurst P.L., again, is a local law practice that only performs legal services within the State of Florida, that only solicit clients within the Florida, and with one exception over the past three years has never provided any services outside the State of Florida. Moreover, due to the particularly localized nature of the Firm's practice, Hurst P.L.'s clients are almost exclusively located in South Florida. (*Affidavit of Ronald Hurst* ¶ 12)

12.   The Firm does not produce any goods to be sent outside the State of Florida. (*Affidavit of Ronald Hurst* ¶ 13)

## III.   MEMORANDUM OF LAW

### A.   Plaintiff's Amended Complaint Should be Dismissed for Failure to State A Claim

### 1.   Legal Standard for Motion to Dismiss

The present case purports to be an action to recover compensation under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.* ("FLSA"). (Amended Complaint, ¶1). Despite electing to file an Amended Complaint, Plaintiff's pleading is still devoid of virtually any facts, but instead contains only the most cursory and conclusory of allegations and legal conclusions.

As the Supreme Court explained in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 929 (2007), in order to survive a Motion to Dismiss under Rule 12(b)(6) and 8(a)(2), while a Complaint "does not need detailed factual allegations," it demands more than "an unadorned, the defendant-unlawfully-harmed-me accusations." *Twombly*, 550 U.S. at 555. As a result, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a Complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557.

Instead, a complaint must contain sufficient factual matter to "state a claim that relief is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." As a result, "where a complaint pleads facts that are 'merely

consistent with a defendant's liability it stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Twombly*, 550 U.S. at 557.

The Supreme Court has since further clarified its decision in *Twombly in Ashcroft v. Iqbal*, 77 USLW 4387, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (U.S. 2009). The Court explained that:

> Two working principles underlie our decision in *Twombly*. First, the tenent that a court must accept as true all of the allegations contained in a complaint *is inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by *mere conclusory statements do not suffice*.... Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit that court to infer more than the mere possibility of misconduct the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949-1950 (emphasis added)(citations omitted).

As a result, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950.

Thus, based on *Twombly* and its recent decision in *Iqbal* reaffirming *Twombly*, the Supreme Court has held that:

• Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.

• "[A] formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.

• A plaintiff must plead a claim for relief that is "plausible on its face,"

which means that it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 556.

• "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.

• Legal conclusions couched as factual allegations are not required to be treated as true. *Iqbal*, 129 S.Ct. at 1950; *Twombly*, 550 U.S. at 555.

## 2. Plaintiff's Amended Complaint fails to State of Claim under Twombly/Iqbal

Under *Twombly/Iqbal*, a court must now engage in a two-step inquiry to determine the sufficiency of the factual matter alleged. First, the court must identify and weed out pleadings that are nothing more than legal conclusions and, therefore, "not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1949-1950 ("the tenent that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, the court should identify the non-conclusory, well-pled factual allegations, "assume their veracity [but] then determine whether they plausibly give rise to an entitlement of relief." *Id.* If the factual allegations, assumed true, are consistent with a claim for relief, that claim must nevertheless be dismissed if the facts are equally consistent with a finding that no wrongdoing occurred. *Id.*

Applying the foregoing *Twombly* and *Iqbal* standards, the allegations in Plaintiff's Complaint are woefully deficient in stating any plausible claim for relief. Within his abbreviated, eleven paragraph Amended Complaint, Plaintiff makes no more than the conclusory assertions that Defendants violated the provisions of the Federal Fair Labor Standards Act (Complaint, ¶9), offering no specific facts explaining how or when Defendants allegedly did so.  When examined under the standards established in

*Twombly* and *Iqbar,* the naked assertions, conclusory statements, and legal conclusions within Plaintiff's Complaint mandate its dismissal.

**B.    Alternatively, The Court Should Dismiss Plaintiff's Amended Complaint or Enter Summary Judgment in Defendant's Favor for Lack of Subject Matter Jurisdiction**

**1. Standard for Establishing Subject Matter Jurisdiction**

It is settled that "the party invoking the Court's jurisdiction, bears the burden of demonstrating that this matter falls within the Court's subject matter jurisdiction." *Makro Capital of Am., Inc. v. UBS AG,* 436 F. Supp. 2d 1342, 1345 (S.D. Fla. 2006); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *OSI, Inc. v. United States,* 285 F.3d 947, 951 (11th Cir. 2002) (holding that "the burden is on the plaintiff to prove that jurisdiction exists").

**2. Legal Standard for Summary Judgment**

Summary judgment under Federal Rule Civil Procedure 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This burden may be met by "showing" or "pointing out" to the Court that there are no genuine issues of material fact. *Jeffrey v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995) *(per curiam)* (quoting Celotex, 447 U.S. at 325). Once the initial burden is met, the non-moving party must go beyond the pleadings and "come forward with

'specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Celotex,* 477 U.S. at 324. In so doing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson,* 477 U.S. at 252; *see also Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1369 (11th Cir. 1998) (citations omitted). The Court must then decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson,* 477 U.S. at 251-52)).

Because the Defendants submit supporting Affidavits with this Motion, an issue arises concerning whether the Court must convert the Motion into a motion for summary judgment in order to consider that evidence. Normally, only the four corners of the plaintiff's complaint, taken as true, will be the basis for determining whether the pleader has stated valid claims, *Jack H. Friedenthal, et al., Civil Procedure,* § 5.22, at 295 (2d ed. 1993); however, in the context of FLSA cases in which jurisdiction is being challenged, an affidavit from a manager or owner of the company with knowledge of the returns submitted with a motion to dismiss may be considered without converting the motion to dismiss into a motion for summary judgment and without any additional discovery. *See,*

*e.g., Cordero v. Red Grouper, Inc.,* 2008 WL 1781158 (M.D. Fla. 2008) (denying a motion to permit discovery limited to the issue of enterprise coverage and holding that tax returns are enough to decide the issue); *Lopez v. Top Chef Investment, Inc.,* 2007 WL 4247646, *3 (S.D. Fla. 2007) (rejecting plaintiff's conclusory assertions that the defendant had gross revenue that exceeded $500,000 annually, and accepting the figures on the defendant's tax returns in granting summary judgment for defendant); *Russell v. Continental Restaurant, Inc.,* 430 F. Supp.2d 521, 524 (D. Md. 2006) (granting motion to dismiss filed by restaurant sued by a waitress, and disallowing any discovery with regard to the tax returns and affidavit submitted with the motion).

The Eleventh Circuit has considerable precedent in the Rule 12(b)(6) context that holds that a court must convert a motion to dismiss into a motion for summary judgment when matters outside of the four corners of the complaint are submitted with the motion, and must give the non-moving party ten (10) days notice to marshal evidence in response to the motion, but has numerous exceptions to that general rule. *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002). In Day, the court held that a district court can consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the attached documents are 1) central to the plaintiff's claim and 2) undisputed. *Day,* 400 F.3d at 1276.

It is not known for certain if the Plaintiff desires to engage in discovery concerning the truthfulness of the local nature of the corporate Defendant or its gross revenues. Whether Plaintiff's counsel does or not, the above case law shows that the Court does not have to allow that. In any event, undersigned counsel raises these points to inform the Court of the appropriate range of relief concerning whether to allow discovery

or not. If the Plaintiff challenges the averments that the Firm is local or that its gross revenue is less than $500,000, and if the Court does allow discovery, the Defendants request that the Court limit discovery to only the issue of subject matter jurisdiction, and that discovery be limited to thirty (30) days. *Delisle v. LGY Corp.,* 535 F. Supp. 2d 1266 (S.D. Fla. 2008); *Guzman v. Irmadan, Inc.,* 2008 WL 926375 (S.D. Fla., Mar. 4, 2008). [1]

### 3.     The Plaintiff Cannot Establish Jurisdiction Under The FLSA.

#### a). General Analysis

Section 207(a) of the FLSA provides, in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise

---

[1]The Court should note that other Judges in the Southern District of Florida have recently allowed plaintiffs approximately thirty (30) days in which to respond to a motion for summary judgment that challenges subject matter jurisdiction in a FLSA case. *Delisle v. LGY Corp.,* 535 F. Supp. 2d 1266 (S.D. Fla. 2008); *Guzman v. Irmadan, Inc.,* 2008 WL 926375 (S.D. Fla., Mar. 4, 2008); *Lainez v. Francis Eng'g,* 2008 WL 3875406, *1 (S.D. Fla., Aug. 4, 2008) (allowing thirty (30) days for discovery). In *Delisle,* Judge Seitz gave the plaintiff approximately thirty (30) days to engage in discovery and file a response to the Motion for Summary Judgment. In *Irmadan,* Judge Altonaga provided the plaintiff with thirty-four (34) days in which to engage in discovery and file a response. In neither case did the Court outright deny the motions to dismiss/summary judgment, but rather converted them to summary judgment in both cases. At least one other published opinion in South Florida involved a court converting a motion to dismiss into a motion for summary judgment and giving the plaintiff a few weeks to engage in discovery, but staying discovery except for subject matter jurisdiction. *Navarro v. Broney Automotive Repairs, Inc.,* 533 F. Supp. 2d 1223 (S.D. Fla. 2008) (converting motion to dismiss into motion for summary judgment and granting summary judgment in favor of defendants).

Here, the Defendants ask as alternative relief that the Court convert the Motion to Dismiss into a Motion for Summary Judgment (as the courts did in *Navarro, Delisle,* and *Irmadan, Inc.*), provide the Plaintiff with an opportunity to conduct discovery, limited to the subject matter jurisdiction issues, and that it order that the Plaintiff may submit a response in approximately forty (40) days from its ruling. This is a similar approach taken by the courts in *Navarro, Delisle,* and *Irmadan, Inc.,* and those courts noted that their approach was consistent with Eleventh Circuit precedent. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (holding that if a factual attack is made as to subject matter jurisdiction, the court should convert the motion into one for summary judgment).

engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Simply put, the FLSA requires an employer to pay overtime at a rate of one and one-half the employee's regular rate for all time worked over 40 hours in a week, as long as that employee is engaged in commerce or in the production of goods for commerce. Id. The FLSA overtime provisions apply in two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce-(i.e., individual coverage); or (2) where an employee works for an enterprise engaged in commerce or in the production of goods for commerce-(i.e., enterprise coverage). *Ares v. Manuel Diaz Farms, Inc.,* 318 F.3d 1054, 1056 (11th Cir. 2003).

"The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." *Kitchings v. Florida United Methodist Children's Home, Inc.,* 393 F. Supp. 2d 1282, 1292 n.25 (M.D. Fla. 2005) (citing *D.A. Schulte, Inc., v. Gangi,* 328 U.S. 108, 121 (1946) and Warren-Bradshaw *Drilling Co. v. Hall,* 317 U.S. 88, 90 (1942)). This is because the burden of proof on a challenge to subject-matter jurisdiction lies with the party invoking the court's jurisdiction: here, the Plaintiff. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *OSI, Inc. v. United States,* 285 F.3d 947, 951 (11th Cir. 2002) (holding that "the burden is on the plaintiff to prove that jurisdiction exists").

Under the first type of FLSA coverage- "individual coverage" -an employee is entitled to time-and-a-half overtime pay as long as he or she is "engaged in commerce or

in the production of goods for commerce." *See* 29 U.S.C. § 207; *Bien-Aime v. Nanak's Landscaping, Inc.,* 572 F. Supp. 2d 1312 (S.D. Fla. 2008). To determine whether an employee performed such work, a court must focus its inquiry on the activities of the employee and not on the business of the employer. *See Mitchell v. Lublin McGaughy & Assocs.,* 358 U.S. 207, 211 (1959); *see also Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1267-68 (11th Cir. 2006).

In Thorne, the Eleventh Circuit held that it was "the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce." Thus, an employee must be "engaged in commerce," which means he must be "directly participating in the actual movement of persons or things in interstate commerce." *Thorne,* 448 F.3d at 1266. Further, in addition to the requirement that the individual must be directly participating in the actual movement of persons or things in interstate commerce, "[f]or an employee to be engaged in commerce, '*a substantial part* of the employee's work must be related to interstate commerce." *Kitchings,* 393 F. Supp.2d at 1293 n.26 (emphasis added) (quoting *Boekemeier v. Fourth Universalist Soc'y in City of New York,* 86 F. Supp.2d 280, 287 (S.D. N.Y. 2000) and (citing *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 572 (1943)).

Under the second type of FLSA coverage - "enterprise coverage"- an employee is entitled to time-and-a-half overtime pay if he or she is employed by "an enterprise engaged in commerce," as defined by § 203(s) of the statute. Section 203(s) of the FLSA provides in relevant part that an "[e]nterprise engaged in commerce or in the production of goods for commerce" means an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working

on goods or material that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A)(ii). Thus, in order for an enterprise to be "engaged in commerce," for purposes of enterprise coverage, a business must have employees handling goods or materials that have been moved in interstate commerce and must have annual gross volume of sales or business done in excess of $500,000. See 29 U.S.C. § 203(s)(1)(A)(ii); *Sandoval v. Florida Paradise Lawn Maintenance, Inc.,* 2008 WL 5250274 (11th Cir., Dec. 18, 2008), *aff'g Sandoval v. Florida Paradise Lawn Maintenance,* Inc., 2008 WL 1777392 *5-6 (S.D. Fla., Apr. 17, 2008).

To resolve this Motion, the Court must decide, in reviewing the record in the light most favorable to Plaintiff, four issues: 1) whether, the Plaintiff participated in the actual movement of persons or goods in interstate commerce, and whether that participation was sufficiently substantial as needed to support a finding of individual coverage under the FLSA; 2) whether the Firm employed two or more employees who regularly and recurrently engaged in interstate commerce; 3) whether the Firm has annual gross volume of sales made or business done of $500,000 or more for the time period relevant to this matter; and; 4) whether Hurst can be held personally liable under the FLSA.

### b. Individual Coverage

Plaintiff alleges that the overtime provisions of the FLSA apply in this case because he was purportedly engaged in interstate commerce and that his work for Defendants involved the use of goods that traveled in interstate commerce. As to Plaintiff's use of goods that traveled in interstate commerce, it is well-settled that this is

not enough to invoke individual coverage under the FLSA. *See Thorne,* 448 F.3d at 1267 (holding that "[w]hen goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further intrastate movement of the goods are not covered under the Act") (citing *McLeod v. Threlkeld,* 319 U.S. 491, 493 (1943)); *Junkin v. Emerald Lawn Maintenance & Landscaping, Inc.,* 2005 WL 2862079, *1 (M.D. Fla. 2005) (holding that there was no individual coverage because "[t]he Court is not persuaded that the mere act of transporting goods that previously found themselves in the flow of interstate commerce means that an employee 'engaged in commerce' and is thus subject to 'individual coverage' under the FLSA"); *see also Russell v. Continental Restaurant, Inc.,* 430 F. Supp.2d 521, 526-27 (D. Md. 2006) (citing *Thorne* and rejecting the argument that handling produce from out-of-state demonstrates that a restaurant employee is engaged in interstate commerce).

The reason for the foregoing  decisions is found in long ago decided Supreme Court decisions that clearly hold that the inquiry concerning individual coverage focuses "on the activities of the employee and not on the business of the employer." *Mitchell v. Lublin McGaughy & Assocs.,* 358 U.S. 207, 211 (1959).[2] The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the

---

[2] Under individual coverage jurisprudence, "commerce" and "interstate commerce" are narrower terms of art than in other areas of Commerce Clause jurisprudence. As the Supreme Court has clarified, in enacting the FLSA, Congress did not intend to exercise the full extent of its constitutional regulatory powers, and clearly intended to exempt local businesses:

> [W]e cannot be unmindful that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states' [citations omitted]. Moreover as we stated in *Kirschbaum Co. v. Walling* [citations omitted], Congress did not exercise in this Act the full scope of the commerce power.

*Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 571 (1943). Further, because the FLSA manifests the "concern of Congress to avoid undue displacement of state regulation of activities of a dominantly local character ... [t]he focus of coverage became 'commerce', not in the broadest constitutional sense, but in the limited sense of Section 3(b) of [the FLSA, 29 U.S.C. § 203(b): 'trade, commerce, transportation, transmission, or communication among the several States....'" *Marshall v. Whitehead,* 463 F. Supp. 1329, 1345 (M.D. Fla. 1978) (citing *Mitchell v. H. B. Zachry Co.,* 362 U.S. 310, 315 (1960)).

production of goods for interstate commerce. *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 121 (1946); *Warren-Bradshaw Drilling Co. v. Hall,* 317 U.S. 88, 90 (1942). Finally, and importantly, "a substantial part of [Plaintiff's] work" must be the engagement in interstate commerce for the Plaintiff to successfully invoke coverage. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 572 (1943) (holding that individual coverage is only established if a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the [FLSA]").

Not surprisingly, where the defendant's business is essentially local in nature and individual coverage is lacking, other courts in the Southern District of Florida are readily granting summary judgment in favor of employers in FLSA cases.[3]

---

[3] *Sandoval v. Florida Paradise Lawn Maintenance, Inc.,* 2008 WL 5250274, (11th Cir., Dec. 18, 2008), *aff'g Sandoval v. Florida Paradise Lawn Maintenance, Inc.,* 2008 WL 1777392 *5-6 (S.D. Fla., Apr. 17, 2008) (Huck, J.); *Monelus v. Tocodrian, Inc.,* F. Supp. 2d -, 2008 WL 5272171 (S.D. Fla., Dec. 16, 2008) (Dimitrouleas, J.) (granting summary judgment and noting that local restaurant is not engaged in interstate commerce); *Milbourn v. Aarmada Protection Sys. 2000, Inc.,* F. Supp. 2d -, 2008 WL 5044550 (S.D. Fla., Nov. 20, 2008) (Altonaga, J.) (granting summary judgment for the defendants, noting defendants "are not subject to the requirements of the FLSA because Aarmada is a local business [burglar alarm installation company] that does not engage in interstate commerce."); *Bien-Aime v. Nanak's Landscaping, Inc.,* 572 F. Supp. 2d 1312 (S.D. Fla. 2008) (Lenard, J.) (granting summary judgment for lack of enterprise coverage in a case where defendant had over $500,000 in annual revenue, holding that "it is clear from the record that Defendant's business involves the landscaping of properties solely within the State of Florida and does not affect interstate commerce in the manner intended to trigger application of the FLSA"... and application of the FLSA in this case would clearly undermine the intent of Congress in enacting the FLSA, which was to 'leave local business to the protection of the states') (quoting Walling v. Jacksonville Paper Co., 317 U.S. 564, 571 (1943)); *Polycarpe v. E & S Landscaping, Inc.,* 572 F. Supp. 2d 1318 (S.D. Fla. 2008) (King, J.) (granting summary judgment for lack of enterprise coverage in a case where defendant had over $500,000 in annual revenue, holding that "the Defendants have submitted overwhelming evidence that the landscaping business was strictly of a local nature and the various items used in the business proliferated this goal of local service [as defendant] only performs work within the State of Florida, only solicits clients in the South Florida area, only conducts business in the State of Florida, and does not provide any services outside of the State of Florida" and "[t]he fact that the Defendant Company provided services of an exclusively local nature is dispositive"); *Lamonica v. Safe Hurricane Shutters, Inc.,* 578 F. Supp. 2d 1363 (S.D. Fla. 2008) (Cohn, J.) (holding FLSA does not apply to local hurricane shutter installation company, although company's gross annual revenue exceeded $500,000); *Morales v. M & M Painting and Cleaning Corp.,* 2008 WL 4372891 (S.D. Fla., Sept. 24, 2008) (O'Sullivan, J.) (holding that FLSA does not apply to local painting company, although company's gross annual revenue exceeded $500,000). The defendants in *Monelus, Aarmada, Bien-Aime, Polycarpe, Lamonica, Morales,* and *Sandoval* were restaurants, burglar alarm installation, landscaping, hurricane shutter installation, and

It is clear from the facts of this case that the Plaintiff simply was not involved in any substantial manner in the actual movement of persons or goods in interstate commerce, much less that the participation was sufficiently substantial as needed to support a finding of individual coverage under the FLSA. (Facts ¶¶2-4). The Plaintiff simply worked in a local law firm, and the materials with which he worked were clearly at rest, and no longer in interstate commerce. (Facts ¶¶ 2-4); *Navarro v. Broney Automotive Repairs, Inc.,* 533 F. Supp. 2d 1223 (S.D. Fla. 2008) (holding that the in-state purchase of automotive parts from wholesalers and retailers that were manufactured or traveled outside Florida does not constitute the engagement in commerce, because the parts were at rest and out of the stream of commerce). The Firm is a purely local, one-location, law firm that does not have employees engaged in interstate commerce or in the production of goods for interstate commerce. (Facts ¶¶ 2-4). This is exactly the sort of local business Congress, in enacting the FLSA, intended to leave to the regulation of the several states. *Jacksonville Paper Co.,* 317 U.S. at 571.

### c). Enterprise Coverage

### i. The Two-or-More-Employees-Engaged-in-Commerce Requirement

Under the FLSA, unless the enterprise has $500,000 or more in gross annual revenue, and has two or more employees who are engaged in commerce or in the production of goods for commerce, the employer is not subject to the Act. 29 U.S.C. §

---

painting companies with local South Florida operations similar to Defendants' business (service of the tri-county area). *Scott v. K.W. Max Investments, Inc.,* 2007 WL 423080 (M.D. Fla., Feb. 6, 2007) (holding that the handling of building materials that had traveled in interstate commerce not enough to establish individual coverage, and noting that there was no production of goods, much less goods for commerce, since the employer was a service provider), and there has been one Eleventh Circuit case that has followed *Thorne. Scott v. K.W. Max Investments, Inc.,* 2007 WL 2850926 (11th Cir., Oct. 2, 2007) (holding that the plaintiff purchasing goods from a Home Depot that had originally moved through commerce not entitled to invoke individual coverage).

203(s)(1)(A)(i & ii). Section 203(s)(1)(A)(i) of the FLSA, which pertains to enterprise coverage, requires that the defendant-employer have employees engaged in commerce or in the production of goods for commerce, as follows:

> (s)(1) 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise that-
> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) ...

29 U.S.C. § 203(s)(1)(A)(i). The courts have found that the plaintiff seeking to establish enterprise coverage must satisfy both of these elements. *Sandoval v. Florida Paradise Lawn Maintenance, Inc.,* 2008 WL 5250274 (11th Cir., Dec. 18, 2008), *aff'g Sandoval v. Florida Paradise Lawn Maintenance, Inc.,* 2008 WL 1777392 * 5-6 (S.D. Fla., Apr. 17, 2008); *Monelus v. Tocodrian, Inc.,* - F. Supp. 2d -, 2008 WL 5272171 (S.D. Fla., Dec. 16, 2008); *Milbourn v. Aarmada Protection Sys.* 2000, Inc., - F. Supp. 2d -, 2008 WL 5044550 (S.D. Fla., Nov. 20, 2008); *Bien-Aime v. Nanak's Landscaping, Inc.,* 572 F. Supp. 2d 1312 (S.D. Fla. 2008); *Polycarpe v. E & S Landscaping, Inc.,* 572 F. Supp. 2d 1318 (S.D. Fla. 2008); *Lamonica v. Safe Hurricane Shutters, Inc.,* 578 F. Supp. 2d 1363 (S.D. Fla. 2008); *Morales v. M & M Painting and Cleaning Corp.,* 2008 WL 4372891 (S.D. Fla., Sept. 24, 2008); *Scott v. K.W. Max Investments, Inc.,* 2007 WL 2850926 (11th Cir., Oct. 2, 2007); *Francois v. Fried Green Tomatoes, Inc.,* 2006 WL 5097646, *2 n.1 (S.D. Fla.) (noting that these are the two elements to enterprise coverage and the parties had stipulated to the first element).

As demonstrated above, Plaintiff was not engaged in commerce, because all he

did was work in a local law firm, and the supplies that he used in his employment were outside of the stream of commerce by the time he used them, because they were purchased locally. Any other involvement was insubstantial in relation to Plaintiff's overall duties. (Facts ¶¶ 4,6).

Thus, in this case, Plaintiff cannot fulfill the first element to the enterprise coverage framework, because Plaintiff was neither substantially engaged in commerce himself, nor is any other employee employed by Hurst, P.L., engaged in commerce or the production of goods for commerce, because the Firm is a local law firm that purchases the supplies and other products that it uses from local merchants. (Facts ¶¶ 2-4).

### ii. The $500,000-Gross-Annual-Revenue Requirement

Plaintiff cannot sustain the second element for the years in question because Defendant Hurst P.L.'s revenue was less than $500,000. As such, the Defendants are also entitled to summary judgment, because the gross annual revenue for the Firm failed to exceed $500,000 in 2008 and 2009 (Facts ¶10). *Sandoval v. Florida Paradise Lawn Maintenance, Inc.,* 2008 WL 5250274 (11th Cir., Dec. 18, 2008), *aff'g Sandoval v. Florida Paradise Lawn Maintenance, Inc.,* 2008 WL 1777392 * 5-6 (S.D. Fla., Apr. 17, 2008); *Monelus v. Tocodrian, Inc.,* - F. Supp. 2d -, 2008 WL 5272171 (S.D. Fla., Dec. 16, 2008); *Milbourn v. Aarmada Protection Sys. 2000, Inc.,* -- F. Supp. 2d --, 2008 WL 5044550 (S.D. Fla., Nov. 20, 2008); *Bien-Aime v. Nanak's Landscaping, Inc.,* 572 F. Supp. 2d 1312 (S.D. Fla. 2008); *Polycarpe v. E & S Landscaping, Inc.,* 572 F. Supp. 2d 1318 (S.D. Fla. 2008).

### iii. Hurst's Individual "Employer" Liability

Under the FLSA, an individual corporate official can be considered an employer. Title 29 U.S.C. § 203(d) defines an "employer" as "any person acting directly or indirectly in the interest of the employer in relation to an employee." 29 U.S.C. § 203(d). The Eleventh Circuit has routinely interpreted this phrase to mean that an employer must be involved in the day-to-day operations of the business, particularly with respect to the setting of wages in order to be an employer under the Act. *Patel v. Wargo,* 803 F.2d 632, 637 (11th Cir. 1986) (quoting *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983)).

However, Hurst's liability is only derivative to that of the corporate Defendant, *Patel v. Wargo,* 803 F.2d 632, 637 (11th Cir. 1986). As Hurst P.L. is not subject to suit, Hurst, is entitled to summary judgment on that ground. *Milbourn v. Aarmada Protection Sys.* 2000, Inc., -- F. Supp. 2d --, 2008 WL 5044550 (S.D. Fla., Nov. 20, 2008).

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of the Defendants.

Dated this 18th day of June, 2010.

MCDONALD HOPKINS, LLC
505 South Flagler Drive, Suite 300
West Palm Beach, FL  33401
Telephone: (561) 472-2121
Facsimile:   (561) 472-2122
*Attorneys for Defendants*

BY:   s/ Howard K. Coates, Jr.
      HOWARD K. COATES, JR.
      Florida Bar Number:  0714305
      Email:hcoates@mcdonaldhopkins.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Howard K. Coates, Jr.
HOWARD K. COATES, JR.

{2166046:3}                                       21

## <u>SERVICE LIST</u>

Curtis Bozeman v. The Hurst Law Group, P.L., and Ronald A. Hurst
Case No. 10-80500-Civ-MARRA
United States District Court, Southern District of Florida

Luis A. Cabassa, Esq.
lcabassa@wfclaw.com
Wenzel Fenton Cabassa, P.A.
1100 North Florida Avenue, Ste. 300
Tampa, Florida 33602
Telephone: (813) 224-0431
Facsimile: (813) 229-8712
Attorneys for Plaintiff Curtis Bozeman Via
U.S. Mail

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:  10-80500-Civ-Marra

CURTIS BOZEMAN,

      Plaintiff,

v.

THE HURST LAW GROUP, P.L., a
Florida limited liability company, and
RONALD A. HURST, individually,

      Defendants.

_____/

## AFFIDAVIT OF RONALD A. HURST, ESQUIRE

Ronald A. Hurst, Esq. states as follows under penalty of perjury, pursuant to 28

USC § 1746:

      1.  The statements made in this declaration are true and correct to the best of

my knowledge, and I have personal knowledge concerning the statements made herein.

      2.  Defendant, The Hurst Law Group, P.L. ("Hurst P.L." or "Firm") is a local

criminal law firm created on April 6, 2008, with one location in South Florida.  During

the time relevant to this matter, Defendant Hurst P.L. had four types of employees, one

lawyer (i.e., Hurst), a part-time business manager, a secretary, and two paralegals, one of

which was the Plaintiff.

      3.  I am a licensed Florida attorney and the sole member of the Firm.

Neither Hurst P.L. nor I have ever sought to expand the existing business outside the

State of Florida.  Neither Hurst P.L. nor I am authorized or licensed to practice law in

states other than the State of Florida.



4.   Defendant Hurst P.L. is not a law firm engaged in interstate commerce for purposes of the Fair Labor Standards Act.  The Firm does not engage in any advertising outside the South Florida area and with the exception of one case in the last two years, all of the cases handled by the Firm have been in Florida.  Currently, the Firm has no existing matters or clients outside the State of Florida.   Thus, Defendants almost exclusively perform legal work here to the local community in South Florida, and do not produce any goods or provide any services outside the local South Florida area, nor have they ever sought to do that.

5.   Plaintiff, Curtis Bozeman, worked for the Firm from April 19, 2008 to January 19, 2009, and his responsibilities included "litigation paralegal, clerical and related duties." At no time during Plaintiff's employment was he engaged substantially in interstate commerce as is required under FLSA.   Plaintiff was one of the Firm's paralegals who assisted the Firm in providing legal services to the Firm's clients,  which were Florida clients or concerned matters pending in the Florida courts.   At all times during Plaintiff's employment, his employment was strictly limited to Hurst P.L. and at no time was he engaged in any substantial way in interstate commerce during his employment. His tasks included answering the phone, typing, handling and speaking with clients and other local attorneys, scheduling and filing pleadings in local courts, and other non-manual work directly related to the general law office operations.  In addition, during the time period relevant to this matter (and currently), none of the other employees of Defendant Hurst P.L. were substantially engaged in interstate commerce or provided goods in interstate commerce.

6.   As the Firm's criminal law practice was almost exclusively based in South Florida, any use by Plaintiff of any instrumentalities in interstate commerce was insubstantial and de minimis. The Plaintiff did not engage in the production of any goods for commerce, did not directly participate in the actual movement of persons or things through interstate commerce, and did not use the instrumentalities of interstate commerce in any substantial way, such as interstate telephone, facsimile, mail or travel because almost all of the legal services provided by me, individually, and by the Firm were in the local South Florida area during the relevant time period.

7.   Further, any products or instrumentalities used by Plaintiff or the Firm in providing legal services to the Firm's clients were products purchased locally at retail stores here in South Florida or from local vendors.  Plaintiff did not order or purchase goods or supplies for either me or the Firm from another state. Plaintiff did not perform any functions that require the conclusion that he was substantially engaged in interstate commerce.

8.   As a paralegal, Plaintiff was called upon to assist the Firm and me as its sole member in the provision of legal services, but was not authorized to provide legal advice or services himself.  Moreover, Plaintiff, at no time during his employment with the Firm, ever provided goods in the stream of commerce to any of the Firm's clients.

9.   The Firm's other employees, also did not engage in interstate commerce, did not engage in the production of goods for interstate commerce, did not handle, sell or otherwise work on goods or materials that had moved in or were produced for interstate commerce as defined by the FLSA, because the Firm only purchased goods locally. Thus, during the time period relevant to this matter (and currently), none of the other

employees of Firm are substantially engaged in interstate commerce or provide goods in interstate commerce.

10. During Plaintiff's employment, the Firm employed four other ministerial employees. The other employees did work for Hurst P.L., and this work included part-time bookkeeping, secretarial work, and paralegal work on cases being handled by the Firm in South Florida for Florida clients. None of the Firm's employees, including the Plaintiff, engaged in interstate commerce, nor did they engage in any type of production of goods for interstate commerce, nor did they handle, sell, or otherwise work on goods or materials that had moved in the lines of interstate commerce or that were produced for interstate commerce.

11. The Firm is not an enterprise engaged in interstate commerce for purposes of FLSA, because it did not have gross revenue that exceeded $500,000 in 2008 or 2009. The tax returns for the Firm attached to the Affidavit of Francis Waite are a true and accurate statement of the actual revenue that the Firm earned during the relevant time period.

12. The Firm again, is a local law practice that only performs legal services within the State of Florida, only solicit clients within Florida, and with one exception over the past two years has never provided any services outside the State of Florida. Moreover, due to the particularly localized nature of the Firm's practice, Hurst P.L.'s clients are almost exclusively located in South Florida.

13. The Firm does not produce any goods to be sent outside the State of Florida.

FURTHER AFFIANT SAYETH NAUGHT.

Dated this _17_ day of _June_ 2010.

_____
RONALD A. HURST

Sworn to and subscribed before me, this _16th_ day of June, 2010, by RONALD A.

HURST, who is personally known to me.

NOTARY PUBLIC-STATE OF FLORIDA
Mark E. Bannon
Commission # DD746507
Expires:   JAN. 07, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

_____
Notary Public, State of Florida at Large

_____
My Commission Expires

Seal (Stamp):

{2172190:3}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:  10-80500-Civ-Marra

CURTIS BOZEMAN,

       Plaintiff,

v.

THE HURST LAW GROUP, P.L., a
Florida limited liability company, and
RONALD A. HURST, individually,

       Defendants.

_____/

## SWORN DECLARATION OF FRANCIS WAITE

       Francis Waite states as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

       1.    The statements made in this declaration are true and correct to the best of my knowledge, and I have personal knowledge concerning the statements made herein.

       2.    I am employed as a bookkeeper for Hurst, P.L. ("Firm") and have been employed since September 2008.

       3.    As bookkeeper for the Firm, I am responsible for managing and attending to the financial records of the Firm.

       4.    The Firm's gross revenue for 2008 and 2009 did not exceed $500,000 per year.  True and correct copies of the tax returns filed for the Firm for 2008 and 2009 are attached hereto and incorporated herein as Exhibits "A" and "B, " respectively.



{2189961:2}

EXECUTED on this _16th_ day of _June_, 2010 at _____,

Florida.

FURTHER AFFIANT SAYETH NAUGHT.

_Francis Waite_

FRANCIS WAITE

Sworn to and subscribed before me, this _16th_ day of June, 2010, by FRANCIS

WAITE, who is personally known to me.

NOTARY PUBLIC-STATE OF FLORIDA
Mark E. Bannon
Commission # DD746507
Expires:   JAN. 07, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

_____
Notary Public, State of Florida at Large

_____
My Commission Expires

Seal (Stamp):

{2189961:2}

Form **1120S**

Department of the Treasury
Internal Revenue Service

**U.S. Income Tax Return for an S Corporation**

► Do not file this form unless the corporation has filed or is
attaching Form 2553 to elect to be an S corporation.
► See separate instructions.

OMB No. 1545-0130

**2008**

For calendar year 2008 or tax year beginning _____, 2008, ending _____

| | | | |
|---|---|---|---|
| A  S election effective date  04/06/08 | Use the IRS label. Otherwise, print or type. | Name  HURST LAW GROUP, P.L. | D  Employer identification number  26-2356929 |
| B  Business activity code number (see instrs)  541110 | | Number, street, and room or suite no. If a P.O. box, see instructions.  5204 10TH AVENUE NO. | E  Date incorporated  04/06/08 |
| C  Check if Sch M-3 attached ☐ | | City or town, state, and ZIP code  GREENACRES          FL  33463 | F  Total assets (see instructions)  $  61,518. |

G  Is the corporation electing to be an S corporation beginning with this tax year?  ☒ Yes  ☐ No  If 'Yes,' attach Form 2553 if not previously filed

H  Check if:  (1) ☐ Final return  (2) ☐ Name change  (3) ☐ Address change
　　　　　(4) ☐ Amended return  (5) ☐ S election termination or revocation

I  Enter the number of shareholders who were shareholders during any part of the tax year ............................ ► 1

**Caution.** *Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.*

| | | | | |
|---|---|---|---:|---:|
| **I N C O M E** | 1a Gross receipts or sales .. | 131,580. | b  Less returns and allowances .. | 3,824. | c Bal | 1c | 127,756. |
| | 2 Cost of goods sold (Schedule A, line 8) .................................................. | | 2 | |
| | 3 Gross profit. Subtract line 2 from line 1c .................................................. | | 3 | 127,756. |
| | 4 Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) ........................ | | 4 | |
| | 5 Other income (loss) (attach statement) .................................................. | | 5 | |
| | 6 Total income (loss). Add lines 3 through 5 ......................................... ► | | 6 | 127,756. |

| | | | |
|---|---|---:|---:|
| **D E D U C T I O N S  SEE INSTRS** | 7 Compensation of officers .................................................. | 7 | |
| | 8 Salaries and wages (less employment credits) .................................. | 8 | 38,748. |
| | 9 Repairs and maintenance .................................................. | 9 | 4,218. |
| | 10 Bad debts .................................................. | 10 | |
| | 11 Rents .................................................. | 11 | 20,749. |
| | 12 Taxes and licenses .................................................. | 12 | 5,779. |
| | 13 Interest .................................................. | 13 | 11. |
| | 14 Depreciation not claimed on Schedule A or elsewhere on return (attach Form 4562) .......... | 14 | 2,186. |
| | 15 Depletion (Do not deduct oil and gas depletion.) .................................. | 15 | |
| | 16 Advertising .................................................. | 16 | 251. |
| | 17 Pension, profit-sharing, etc, plans .................................................. | 17 | |
| | 18 Employee benefit programs .................................................. | 18 | |
| | 19 Other deductions (attach statement) ...... STMT .................................. | 19 | 48,637. |
| | 20 Total deductions. Add lines 7 through 19 ......................................... ► | 20 | 120,579. |
| | 21 Ordinary business income (loss). Subtract line 20 from line 6 .......................... | 21 | 7,177. |

| | | | |
|---|---|---|---:|
| **T A X  A N D  P A Y M E N T S** | 22a Excess net passive income or LIFO recapture tax (see instructions) ...... | 22a | |
| | b Tax from Schedule D (Form 1120S) ...... | 22b | |
| | c Add lines 22a and 22b (see instructions for additional taxes) .......................... | 22c | |
| | 23a 2008 estimated tax payments and 2007 overpayment credited to 2008 ...... | 23a | |
| | b Tax deposited with Form 7004 ...... | 23b | |
| | c Credit for federal tax paid on fuels (attach Form 4136) ...... | 23c | |
| | d Add lines 23a through 23c .................................................. | 23d | |
| | 24 Estimated tax penalty (see instructions). Check if Form 2220 is attached .......... ► ☐ | 24 | |
| | 25 Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed ...... | 25 | |
| | 26 Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid ...... | 26 | |
| | 27 Enter amount from line 26 Credited to 2009 estimated tax ►_____ Refunded ► | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Signature of officer | Date  03/10/09 | Title  PRESIDENT |
|---|---|---|

May the IRS discuss this return with the preparer shown below (see instructions)?  ☒ Yes  ☐ No

**Paid Preparer's Use Only**

| Preparer's signature | Date  04/08/09 | Check if self-employed ☒ | Preparer's SSN or PTIN  P00121724 |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | MIQUEL ACCOUNTING SERVICE INC  5100 S DIXIE HWY STE 10  WEST PALM BEACH          FL  33405-3240 | EIN  65-0972606  Phone no.  (561) 588-8878 | |

BAA  For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.          SPSA0112  12/30/08          Form 1120S (2008)

**EXHIBIT**

**A**

tabbies®

Form 1120S (2008)   HURST LAW GROUP, P.L.                                                        26-2356929                     Page 2

## Schedule A    Cost of Goods Sold (see instructions)

| | | |
|---|---|---|
| 1 Inventory at beginning of year ............................................. | 1 | |
| 2 Purchases .............................................................. | 2 | |
| 3 Cost of labor .......................................................... | 3 | |
| 4 Additional section 263A costs *(attach statement)* ....................... | 4 | |
| 5 Other costs *(attach statement)* ....................................... | 5 | |
| 6 **Total.** Add lines 1 through 5 ......................................... | 6 | |
| 7 Inventory at end of year ............................................... | 7 | |
| 8 **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 .......... | 8 | |

9a Check all methods used for valuing closing inventory:

   (i)  ☐ Cost as described in Regulations section 1.471-3

   (ii)  ☐ Lower of cost or market as described in Regulations section 1.471-4

   (iii) ☐ Other (Specify method used and attach explanation.) ▶ _____

  b Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) .................................. ▶ ☐

  c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) .......................... ▶ ☐

| | | | | |
|---|---|---|---|---|
| d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO ................................. | 9d | | | |

e If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? ................. ☐ Yes  ☐ No

f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation ...................................... ☐ Yes  ☐ No

## Schedule B    Other Information (see instructions)

| | Yes | No |
|---|---|---|
| 1 Check accounting method:   a ☒ Cash   b ☐ Accrual   c ☐ Other (specify) ▶ _____ | | |
| 2 See the instructions and enter the: <br> a Business activity ▶ ATTORNEY _____   b Product or service ▶ LEGAL SERVICES ____ | | |
| 3 At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) If 'Yes,' attach a statement showing: (a) name and employer identification number (EIN), (b) percentage owned, and (c) if 100% owned, was a QSub election made? ........................................................... | | X |
| 4 Has this corporation filed, or is it required to file, a return under section 6111 to provide information on any reportable transaction? ........................................................... | | X |
| 5 Check this box if the corporation issued publicly offered debt instruments with original issue discount ........ ▶ ☐ <br> If checked, the corporation may have to file **Form 8281,** Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 6 If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to its basis (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain (defined in section 1374(d)(1)) in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years ....................................... $ _____ | | |
| 7 Enter the accumulated earnings and profits of the corporation at the end of the tax year ........ $ _____ | | |
| 8 Are the corporation's total receipts *(see instructions)* for the tax year and its total assets at the end of the tax year less than $250,000? If 'Yes,' the corporation is not required to complete Schedules L and M-1 | X | |

## Schedule K    Shareholders' Pro Rata Share Items

| | | | | Total amount |
|---|---|---|---|---|
| **I N C O M E  (L O S S)** | 1 Ordinary business income (loss) (page 1, line 21) ............................. | | 1 | 7,177. |
| | 2 Net rental real estate income (loss) *(attach Form 8825)* ................... | | 2 | |
| | 3a Other gross rental income (loss) .......................... | 3a | | |
| | b Expenses from other rental activities *(attach statement)* ... | 3b | | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | | 3c | |
| | 4 Interest income ......................................... | | 4 | |
| | 5 Dividends:  a Ordinary dividends ............................. | | 5a | |
| |          b Qualified dividends ............................. | 5b | | |
| | 6 Royalties .............................................. | | 6 | |
| | 7 Net short-term capital gain (loss) *(attach Schedule D (Form 1120S))* .... | | 7 | |
| | 8a Net long-term capital gain (loss) *(attach Schedule D (Form 1120S))* .... | | 8a | |
| | b Collectibles (28%) gain (loss) ........................... | 8b | | |
| | c Unrecaptured section 1250 gain *(attach statement)* ........ | 8c | | |
| | 9 Net section 1231 gain (loss) *(attach Form 4797)* .................... | | 9 | |
| | 10 Other income (loss) *(see instructions)* ............................ | | 10 | |

Form 1120S (2008)

Form 1120S (2008)   HURST LAW GROUP, P.L.                              26-2356929        Page 3

| | Shareholders' Pro Rata Share Items (continued) | | Total amount |
|---|---|---|---|
| Deduc-tions | 11 Section 179 deduction *(attach Form 4562)* .................................. | 11 | |
| | 12a Contributions ...................Cash contribution..(50%)................ | 12a | 100. |
| | b Investment interest expense .................................................. | 12b | |
| | c Section 59(e)(2) expenditures (1) Type ► _ _ _ _ _ _ _ _ _ _ _ _ _ (2) Amount ► | 12c (2) | |
| | d Other deductions *(see instructions)* ... Type ► | 12d | |
| Credits | 13a Low-income housing credit (section 42(j)(5)) ................................ | 13a | |
| | b Low-income housing credit (other) ............................................. | 13b | |
| | c Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* ........ | 13c | |
| | d Other rental real estate credits *(see instrs)*  Type ► _ _ _ _ _ _ _ _ _ _ _ _ | 13d | |
| | e Other rental credits *(see instrs)*  Type ► _ _ _ _ _ _ _ _ _ _ _ _ | 13e | |
| | f Alcohol and cellulosic biofuel fuels credit *(attach Form 6478)* ................ | 13f | |
| | g Other credits *(see instructions)* ...... Type ► | 13g | |
| Foreign Trans-actions | 14a Name of country or U.S. possession ......... ► _ _ _ _ _ _ _ _ _ _ _ _ | | |
| | b Gross income from all sources .................................................. | 14b | |
| | c Gross income sourced at shareholder level .................................... | 14c | |
| | *Foreign gross income sourced at corporate level* | | |
| | d Passive category ............................................................... | 14d | |
| | e General category ............................................................... | 14e | |
| | f Other *(attach statement)* .................................................. | 14f | |
| | *Deductions allocated and apportioned at shareholder level* | | |
| | g Interest expense ............................................................... | 14g | |
| | h Other ........................................................................... | 14h | |
| | *Deductions allocated and apportioned at corporate level to foreign source income* | | |
| | i Passive category ............................................................... | 14i | |
| | j General category ............................................................... | 14j | |
| | k Other *(attach statement)* .................................................. | 14k | |
| | *Other information* | | |
| | l Total foreign taxes (check one): ► ☐ Paid    ☐ Accrued ........ | 14l | |
| | m Reduction in taxes available for credit | | |
| | (attach statement) .............................................................. | 14m | |
| | n Other foreign tax information *(attach statement)* | | |
| Alternative Mini-mum Tax (AMT) Items | 15a Post-1986 depreciation adjustment .......................................... | 15a | 547. |
| | b Adjusted gain or loss ......................................................... | 15b | |
| | c Depletion (other than oil and gas) ........................................... | 15c | |
| | d Oil, gas, and geothermal properties — gross income ...................... | 15d | |
| | e Oil, gas, and geothermal properties — deductions ........................ | 15e | |
| | f Other AMT items *(attach statement)* ..................................... | 15f | |
| Items Affec-ting Share-holder Basis | 16a Tax-exempt interest income ................................................. | 16a | |
| | b Other tax-exempt income ..................................................... | 16b | |
| | c Nondeductible expenses ...................................................... | 16c | 1,208. |
| | d Property distributions ......................................................... | 16d | |
| | e Repayment of loans from shareholders ..................................... | 16e | |
| Other Inform-ation | 17a Investment income ........................................................... | 17a | |
| | b Investment expenses .......................................................... | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits ........ | 17c | |
| | d Other items and amounts | | |
| | (attach statement) | | |
| Recon-ciliation | 18 **Income/loss reconciliation.** Combine the amounts on lines 1 through 10 in the far right col-umn. From the result, subtract the sum of the amounts on lines 11 through 12d and lines 14l .... | 18 | 7,077. |

BAA                                                                Form 1120S (2008)

Form 1120S (2008)   HURST LAW GROUP, P.L.                          26-2356929          Page 4

## Schedule L   Balance Sheets per Books

| | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|
| Assets | (a) | (b) | (c) | (d) |
| 1  Cash | | | | 52,776. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3  Inventories | | | | |
| 4  U.S. government obligations | | | | |
| 5  Tax-exempt securities *(see instructions)* | | | | |
| 6  Other current assets *(attach stmt)* | | | | |
| 7  Loans to shareholders | | | | |
| 8  Mortgage and real estate loans | | | | |
| 9  Other investments *(attach statement)* | | | | |
| 10a Buildings and other depreciable assets | | | 10,928. | |
| b Less accumulated depreciation | | | 2,186. | 8,742. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12  Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 14  Other assets *(attach stmt)* | | | | 61,518. |
| 15  Total assets | | | | 61,518. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16  Accounts payable | | | | |
| 17  Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18  Other current liabilities *(attach stmt)* | | | | |
| 19  Loans from shareholders | | | | 1,565. |
| 20  Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21  Other liabilities *(attach statement)* .... Ln. 21. St. | | | | 53,484. |
| 22  Capital stock | | | | 600. |
| 23  Additional paid-in capital | | | | |
| 24  Retained earnings | | | | 5,869. |
| 25  Adjustments to shareholders' equity *(att stmt)* | | | | |
| 26  Less cost of treasury stock | | | | |
| 27  Total liabilities and shareholders' equity | | | | 61,518. |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return
Note: Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more — see instructions

| | | |
|---|---|---|
| 1  Net income (loss) per books | 5,869. | 5  Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): |
| 2  Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | a Tax-exempt interest . $ _ _ _ _ _ _ _ _ _ _ |
| 3  Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize): | | 6  Deductions included on Schedule K, lines 1 through 12, and 14l, not charged against book income this year (itemize): |
| a Depreciation ........ $ _ _ _ _ _ _ _ _ _ _ | | a Depreciation .... $ _ _ _ _ _ _ _ _ _ |
| b Travel and entertainment . $ _ _ _ _ _ 1,208. | 1,208. | 7  Add lines 5 and 6 |
| 4  Add lines 1 through 3 | 7,077. | 8  Income (loss) (Schedule K, ln 18). Ln 4 less ln 7 .... 7,077. |

## Schedule M-2   Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1  Balance at beginning of tax year | | | |
| 2  Ordinary income from page 1, line 21 | 7,177. | | |
| 3  Other additions | | | |
| 4  Loss from page 1, line 21 | | | |
| 5  Other reductions ..... * .. STMT | 1,308. | | |
| 6  Combine lines 1 through 5 | 5,869. | | |
| 7  Distributions other than dividend distributions | | | |
| 8  Balance at end of tax year. Subtract line 7 from line 6 | 5,869. | | |

SPSA0134   06/25/08                                          Form 1120S (2008)

OMB No. 1545-0172

Form **4562**

**Depreciation and Amortization**
(Including Information on Listed Property)

**2008**

Department of the Treasury
Internal Revenue Service (99)

► See separate instructions. ► Attach to your tax return.

Attachment
Sequence No. 67

Name(s) shown on return: HURST LAW GROUP, P.L.

Identifying number: 26-2356929

Business or activity to which this form relates: Form 1120S Line 21

## Part I  Election To Expense Certain Property Under Section 179
Note: If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 Maximum amount. See the instructions for a higher limit for certain businesses | 1 | $250,000. |
| 2 Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | $800,000. |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|
| | | |
| | | |

| | | |
|---|---|---|
| 7 Listed property. Enter the amount from line 29 ... 7 | | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | |
| 10 Carryover of disallowed deduction from line 13 of your 2007 Form 4562 | 10 | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 Carryover of disallowed deduction to 2009. Add lines 9 and 10, less line 12 ► 13 | | |

Note: Do not use Part II or Part III below for listed property. Instead, use Part V.

## Part II  Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 Property subject to section 168(f)(1) election | 15 | |
| 16 Other depreciation (including ACRS) | 16 | |

## Part III  MACRS Depreciation (Do not include listed property.) (See instructions)

### Section A

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2008 | 17 | |
| 18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ► ☐ | | |

### Section B — Assets Placed in Service During 2008 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 10,928. | 5.0 yrs | HY | 200DB | 2,186. |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

### Section C — Assets Placed in Service During 2008 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

## Part IV  Summary (See instructions.)

| | | |
|---|---|---|
| 21 Listed property. Enter amount from line 28 | 21 | |
| 22 Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 2,186. |
| 23 For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs ... 23 | | |

BAA For Paperwork Reduction Act Notice, see separate instructions.  FDIZ0812 06/12/08  Form 4562 (2008)

Form 4562 (2008)   HURST LAW GROUP, P.L.                                            26-2356929          Page 2

| Part V | Listed Property (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.) |

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A — Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles.)**

24a Do you have evidence to support the business/investment use claimed? . . . . . . . . . . [ ] Yes [ ] No   24b If 'Yes,' is the evidence written? . . . . . . [ ] Yes [ ] No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) . . . . . . . . . . . . . . . . | | | | | | 25 | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 . . . . . . . . . . . . . . | | | | | 28 | | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | | | | 29 | |

**Section B — Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other 'more than 5% owner,' or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (do not include commuting miles) . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year . . . . . . . . | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven . . . . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 . . . . . . . . . . . . . . | | | | | | | | | | | | |
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 34 Was the vehicle available for personal use during off-duty hours? . . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? . . . . . . . . | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |

**Section C — Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . . . . . . . . . . . . . . | | |
| 39 Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) . . . . . . . | | |

Note: If your answer to 37, 38, 39, 40, or 41 is 'Yes,' do not complete Section B for the covered vehicles.

| Part VI | Amortization |

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2008 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2008 tax year . . . . . . . . . . . . . . . . . . . | | | | 43 | |
| 44 Total. Add amounts in column (f). See the instructions for where to report . . . . . . . . . . . . | | | | 44 | |

671108

| Schedule K-1 | | □ Final K-1 | □ Amended K-1 | OMB No. 1545-0130 |
|---|---|---|---|---|

**Schedule K-1**
(Form 1120S)

**2008**

Department of the Treasury
Internal Revenue Service

For calendar year 2008, or tax
year beginning _____ , 2008
ending _____

**Shareholder's Share of Income, Deductions,
Credits, etc.** ► See page 2 of form and separate instructions.

| Part I | Information About the Corporation |
|---|---|

**A** Corporation's employer identification number
26-2356929

**B** Corporation's name, address, city, state, and ZIP code
HURST LAW GROUP, P.L.
5204 10TH AVENUE NO.
GREENACRES, FL 33463

**C** IRS Center where corporation filed return
Ogden, UT  84201-0013

| Part II | Information About the Shareholder |
|---|---|

**D** Shareholder's identifying number
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

**E** Shareholder's name, address, city, state, and ZIP code
RONALD A. HURST JR.
P.O. BOX 540262
GREENACRES, FL 33454

**F** Shareholder's percentage of stock
ownership for tax year ................... 100.00000 %

F
O
R

I
R
S

U
S
E

O
N
L
Y

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| 1 | Ordinary business income (loss) | 13 | Credits |
|---|---|---|---|
| | 7,177. | | |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 | Alternative minimum tax (AMT) items |
| | | A | 547. |
| 11 | Section 179 deduction | 16 | Items affecting shareholder basis |
| | | C | 1,208. |
| 12 | Other deductions | | |
| A | 100. | | |
| | | 17 | Other information |

*See attached statement for additional information.

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1120S.

Schedule K-1 (Form 1120S) 2008

SPSA0412   12/10/08

HURST LAW GROUP, P.L.   20-2556925

Form 1120S, Page 1, Line 19
Other Deductions

| | |
|---|---:|
| ACCOUNTING | 2,105. |
| AUTOMOBILE AND TRUCK EXPENSE | 1,386. |
| BANK CHARGES | 688. |
| DUES AND SUBSCRIPTIONS | 993. |
| EQUIPMENT RENT | 2,918. |
| GIFTS | 500. |
| INSURANCE | 1,609. |
| LEGAL AND PROFESSIONAL | 1,208. |
| MEALS AND ENTERTAINMENT (50%) | 1,209. |
| MISCELLANEOUS | 1,370. |
| OFFICE EXPENSE | 6,151. |
| OUTSIDE SERVICES | 4,538. |
| PARKING FEES AND TOLLS | 356. |
| POSTAGE | 631. |
| SECURITY | 265. |
| TELEPHONE | 4,352. |
| TRAINING/CONTINUING EDUCATION | 158. |
| TRAVEL | 1,628. |
| UNIFORMS | 126. |
| UTILITIES | 3,041. |
| CLIENT FEES/INSURANCE CLAIMS | 13,405. |
| Total | 48,637. |

Other Liabilities:
1120S, Schedule L, Line 21

| Other Liabilities: | Beginning of tax year | End of tax year |
|---|---|---:|
| TRUST ACCOUNT | | 53,484. |
| Total | | 53,484. |

Form 1120S, Page 4, Schedule M-2, Line 5
Schedule M-2, Other Reductions

| | | |
|---|---:|---|
| CHARITABLE CONTRIBUTIONS | 100. | |
| MEALS AND ENTERTAINMENT | 1,208. | |
| Total | 1,308. | |

Jan. 20. 2009 11:14AM    THE HURST LAW GROUP, PL    NO. 1402    P. 2
COMPOSITE COPY OF ALL 1099-S COMPOSITE COPY OF 1099-S    CONTROL NO. 013914
COPY B FOR RECIPIENT
PAYER'S FEDERAL ID NUMBER: 596001874

STATE OF FLORIDA
## 2008 MISCELLANEOUS INCOME AND CERTAIN GOVERNMENT PAYMENTS
TAX IDENTIFICATION NUMBER: 262356929

TO:

THE HURST LAW GROUP PL
5204 - 10TH AVENUE NORTH
GREENACRES FL 33463

FROM:

STATE OF FLORIDA
ALEX SINK
CHIEF FINANCIAL OFFICER
200 E. GAINES STREET
TALLAHASSEE, FLORIDA 32399-0354
TELEPHONE  (850)  413-5519

----------------------------------------------------------------------------------------

### 2008 MISCELLANEOUS INCOME
OMB NO. 1545 0115

THE AMOUNTS OF MISCELLANEOUS INCOME PAID TO YOU BY STATE OF FLORIDA AGENCIES ARE:

| | | | | | |
|---|---|---|---|---|---|
| BOX 1) | RENTS | $ | 0.00 | BOX 6) MEDICAL AND HEALTH CARE PAYMENTS $ | 0.00 |
| BOX 2) | ROYALTIES | $ | 0.00 | BOX 7) NONEMPLOYEE COMPENSATION     $ | 4,150.00 |
| BOX 3) | OTHER INCOME | $ | 0.00 | BOX 14) GROSS PROCEEDS PAID TO ATTORNEYS $ | 0.00 |

THIS IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE.  IF YOU ARE REQUIRED TO FILE A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION MAY BE IMPOSED ON YOU IF THIS INCOME IS TAXABLE AND THE IRS DETERMINES THAT IT HAS NOT BEEN REPORTED.

INSTRUCTIONS FOR RECIPIENT: AMOUNTS SHOWN ON THIS FORM MAY BE SUBJECT TO SELF-EMPLOYMENT TAX. IF YOUR NET EARNINGS FROM SELF-EMPLOYMENT INCOME ARE $400 OR MORE, YOU ARE REQUIRED TO FILE A RETURN AND COMPUTE YOUR SELF-EMPLOYMENT TAX ON SCHEDULE SE (FORM 1040). SEE PUB. 334, TAX GUIDE FOR SMALL BUSINESS, FOR MORE INFORMATION ON SELF-EMPLOYMENT INCOME. SINCE NO INCOME OR SOCIAL SECURITY AND MEDICARE TAXES WERE WITHHELD BY THE PAYER, YOU MAY HAVE TO MAKE ESTIMATED TAX PAYMENTS IF YOU ARE STILL RECEIVING THESE PAYMENTS. SEE FORM 1040-ES, ESTIMATED TAX FOR INDIVIDUALS. IF YOU ARE AN INDIVIDUAL, REPORT THE TAXABLE AMOUNTS SHOWN ON THIS FORM ON YOUR TAX RETURN, AS EXPLAINED BELOW. (OTHER TAXPAYERS, SUCH AS CORPORATIONS, FIDUCIARIES, OR PARTNERSHIPS, REPORT THE AMOUNTS ON PROPER LINES OF YOUR TAX RETURN.)

BOXES 1 & 2 - RENTS AND ROYALTIES -- REPORT RENTS FROM REAL ESTATE ON SCHEDULE E (FORM 1040). IF YOU PROVIDED SIGNIFICANT SERVICES TO THE TENANT, SOLD REAL ESTATE AS A BUSINESS, OR RENTED PERSONAL PROPERTY AS A BUSINESS, REPORT ON SCHEDULE C OR C-EZ (FORM 1040). FOR ROYALTIES ON TIMBER, COAL, AND IRON ORE, SEE PUB. 544, SALES AND OTHER DISPOSITIONS OF ASSETS.

BOX 3 - OTHER INCOME -- GENERALLY, REPORT ON THE 'OTHER INCOME' LINE OF FORM 1040 AND IDENTIFY THE PAYMENT. IF IT IS TRADE OR BUSINESS INCOME, REPORT THIS AMOUNT ON SCHEDULE C, C-EZ, OR F (FORM 1040). THE AMOUNT SHOWN MAY BE PAYMENTS YOU RECEIVED AS THE BENEFICIARY OF A DECEASED EMPLOYEE, PRIZES, AWARDS, TAXABLE DAMAGES, INDIAN GAMING PROFITS, OR OTHER TAXABLE INCOME.

BOX 6 - MEDICAL AND HEALTH CARE PAYMENTS -- REPORT ON SCHEDULE C OR C-EZ (FORM 1040).

BOX 7 - NONEMPLOYEE COMPENSATION -- GENERALLY SHOWS NONEMPLOYEE COMPENSATION.  GENERALLY, PAYMENTS FOR SERVICES REPORTED AS NONEMPLOYEE COMPENSATION ARE INCOME FROM SELF-EMPLOYMENT.  SINCE YOU RECEIVED THIS FORM, RATHER THAN FORM W-2, THE PAYER MAY HAVE CONSIDERED YOU SELF-EMPLOYED AND DID NOT WITHHOLD SOCIAL SECURITY OR MEDICARE TAXES.  REPORT SELF-EMPLOYMENT INCOME ON SCHEDULE C, C-EZ, OR F (FORM 1040), AND COMPUTE THE SELF-EMPLOYMENT TAX ON SCHEDULE SE (FORM 1040).  HOWEVER, IF YOU ARE NOT SELF-EMPLOYED, REPORT THIS AMOUNT ON FORM 1040 ON THE LINE FOR 'WAGES, SALARIES, TIPS, ETC.'  CALL THE IRS FOR INFORMATION ABOUT HOW TO REPORT ANY SOCIAL SECURITY AND MEDICARE TAXES.

BOX 14 - GROSS PROCEEDS PAID TO AN ATTORNEY IN CONNECTION WITH LEGAL SERVICES.

FORM 1099-MISC (KEEP FOR YOUR RECORDS)
----------------------------------------------------------------------------------------
### 2008 CERTAIN GOVERNMENT PAYMENTS
OMB NO. 1545 0120

THE AMOUNT OF TAXABLE GRANTS PAID TO YOU BY STATE OF FLORIDA AGENCIES IS  $       0.00

THIS IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE.  IF YOU ARE REQUIRED TO FILE A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION MAY BE IMPOSED ON YOU IF THIS INCOME IS TAXABLE AND THE IRS DETERMINES THAT IT HAS NOT BEEN REPORTED.

FORM 1099-G    (KEEP FOR YOUR RECORDS)

COMPOSITE FORM 1099-MISC AND 1099-G                    CORRECTED (IF CHECKED)                    CONTROL NO: 013955
COPY B FOR RECIPIENT

PAYER'S FEDERAL ID NUMBER: 596001874

STATE OF FLORIDA

# 2008 MISCELLANEOUS INCOME AND CERTAIN GOVERNMENT PAYMENTS
TAX IDENTIFICATION NUMBER: 760805140

TO:

THE LAW FIRM OF RONALD ANDERSEN HURST
JR PA
8461 LAKE WORTH ROAD STE 188
LAKE WORTH FL 33467

FROM:

STATE OF FLORIDA
ALEX SINK
CHIEF FINANCIAL OFFICER
200 E. GAINES STREET
TALLAHASSEE, FLORIDA 32399-0354
TELEPHONE  (850) 413-5519

---

## 2008 MISCELLANEOUS INCOME
OMB NO. 1545 0115

THE AMOUNTS OF MISCELLANEOUS INCOME PAID TO YOU BY STATE OF FLORIDA AGENCIES ARE:

| | | | | | | |
|---|---|---|---|---|---|---|
| BOX 1) | RENTS | $ | 0.00 | BOX 6) MEDICAL AND HEALTH CARE PAYMENTS $ | | 0.00 |
| BOX 2) | ROYALTIES | $ | 0.00 | BOX 7) NONEMPLOYEE COMPENSATION | $ | 16,350.00 |
| BOX 3) | OTHER INCOME | $ | 0.00 | BOX 14) GROSS PROCEEDS PAID TO ATTORNEYS $ | | 0.00 |

THIS IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE. IF YOU ARE REQUIRED TO FILE
A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION MAY BE IMPOSED ON YOU IF THIS INCOME IS TAXABLE AND THE IRS DETERMINES
THAT IT HAS NOT BEEN REPORTED.

INSTRUCTIONS FOR RECIPIENT: AMOUNTS SHOWN ON THIS FORM MAY BE SUBJECT TO SELF-EMPLOYMENT TAX. IF YOUR NET EARNINGS
FROM SELF-EMPLOYMENT INCOME ARE $400 OR MORE, YOU ARE REQUIRED TO FILE A RETURN AND COMPUTE YOUR SELF-EMPLOYMENT TAX ON
SCHEDULE SE (FORM 1040). SEE PUB. 334, TAX GUIDE FOR SMALL BUSINESS, FOR MORE INFORMATION ON SELF-EMPLOYMENT INCOME.
SINCE NO INCOME OR SOCIAL SECURITY AND MEDICARE TAXES WERE WITHHELD BY THE PAYER, YOU MAY HAVE TO MAKE ESTIMATED TAX
PAYMENTS IF YOU ARE STILL RECEIVING THESE PAYMENTS. SEE FORM 1040-ES, ESTIMATED TAX FOR INDIVIDUALS. IF YOU ARE AN
INDIVIDUAL, REPORT THE TAXABLE AMOUNTS SHOWN ON THIS FORM ON YOUR TAX RETURN, AS EXPLAINED BELOW. (OTHER TAXPAYERS, SUCH
AS CORPORATIONS, FIDUCIARIES, OR PARTNERSHIPS, REPORT THE AMOUNTS ON PROPER LINES OF YOUR TAX RETURN.)

BOXES 1 & 2 - RENTS AND ROYALTIES -- REPORT RENTS FROM REAL ESTATE ON SCHEDULE E (FORM 1040). IF YOU PROVIDED
SIGNIFICANT SERVICES TO THE TENANT, SOLD REAL ESTATE AS A BUSINESS, OR RENTED PERSONAL PROPERTY AS A BUSINESS, REPORT
ON SCHEDULE C OR C-EZ (FORM 1040). FOR ROYALTIES ON TIMBER, COAL, AND IRON ORE, SEE PUB. 544, SALES AND OTHER
DISPOSITIONS OF ASSETS.

BOX 3 - OTHER INCOME -- GENERALLY, REPORT ON THE 'OTHER INCOME' LINE OF FORM 1040 AND IDENTIFY THE PAYMENT. IF IT IS
TRADE OR BUSINESS INCOME, REPORT THIS AMOUNT ON SCHEDULE  C, C-EZ, OR F (FORM 1040). THE AMOUNT SHOWN MAY BE PAYMENTS
YOU RECEIVED AS THE BENEFICIARY OF A DECEASED EMPLOYEE, PRIZES, AWARDS, TAXABLE DAMAGES, INDIAN GAMING PROFITS, OR
OTHER TAXABLE INCOME.

BOX 6 - MEDICAL AND HEALTH CARE PAYMENTS -- REPORT ON SCHEDULE C OR C-EZ (FORM 1040).

BOX 7 - NONEMPLOYEE COMPENSATION -- GENERALLY SHOWS NONEMPLOYEE COMPENSATION. GENERALLY, PAYMENTS FOR SERVICES REPORTED
AS NONEMPLOYEE COMPENSATION ARE INCOME FROM SELF-EMPLOYMENT. SINCE YOU RECEIVED THIS FORM, RATHER THAN FORM W-2, THE
PAYER MAY HAVE CONSIDERED YOU SELF-EMPLOYED AND DID NOT WITHHOLD SOCIAL SECURITY OR MEDICARE TAXES. REPORT SELF-
EMPLOYMENT INCOME ON SCHEDULE C, C-EZ, OR F (FORM 1040), AND COMPUTE THE SELF-EMPLOYMENT TAX ON SCHEDULE SE (FORM
1040). HOWEVER, IF YOU ARE NOT SELF-EMPLOYED, REPORT THIS AMOUNT ON FORM 1040 ON THE LINE FOR 'WAGES, SALARIES, TIPS,
ETC.' CALL THE IRS FOR INFORMATION ABOUT HOW TO REPORT ANY SOCIAL SECURITY AND MEDICARE TAXES.

BOX 14 - GROSS PROCEEDS PAID TO AN ATTORNEY IN CONNECTION WITH LEGAL SERVICES.

FORM 1099-MISC (KEEP FOR YOUR RECORDS)

---

## 2008 CERTAIN GOVERNMENT PAYMENTS
OMB NO. 1545 0120

THE AMOUNT OF TAXABLE GRANTS PAID TO YOU BY STATE OF FLORIDA AGENCIES IS  $          0.00

THIS IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE. IF YOU ARE REQUIRED TO FILE
A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION MAY BE IMPOSED ON YOU IF THIS INCOME IS TAXABLE AND THE IRS DETERMINES
THAT IT HAS NOT BEEN REPORTED.

FORM 1099-G    (KEEP FOR YOUR RECORDS)

**Form 1120S**

Department of the Treasury
Internal Revenue Service

## U.S. Income Tax Return for an S Corporation

► Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
► See separate instructions.

OMB No. 1545-0130

**2009**

For calendar year 2009 or tax year beginning _____, 2009, ending _____

| | | |
|---|---|---|
| **A** S election effective date 04/06/08 | Use IRS label. Other- wise, print or type. | **Name** HURST LAW GROUP, P.L. |
| **B** Business activity code number (see instrs) 541110 | | **Number, street, and room or suite no. If a P.O. box, see instructions.** 5204 10TH AVENUE NO. |
| **C** Check if Sch M-3 attached ☐ | | **City or town, state, and ZIP code** GREENACRES                FL 33463 |

| **D** Employer identification number | 26-2356929 |
|---|---|
| **E** Date incorporated | 04/06/08 |
| **F** Total assets (see instructions) | $ 99,101. |

**G** Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No  If 'Yes,' attach Form 2553 if not previously filed

**H** Check if: **(1)** ☐ Final return **(2)** ☐ Name change **(3)** ☐ Address change
**(4)** ☐ Amended return **(5)** ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year ........................................ ► 1

**Caution. Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.**

### INCOME

| | | | | |
|---|---|---|---|---|
| 1a | Gross receipts or sales .. | 213,986. | b Less returns and allowances .. | c Bal ► 1c | 213,986. |
| 2 | Cost of goods sold (Schedule A, line 8) ........................................ | | | 2 | |
| 3 | Gross profit. Subtract line 2 from line 1c ........................................ | | | 3 | 213,986. |
| 4 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) ................ | | | 4 | |
| 5 | Other income (loss) (attach statement) ........................................ | | | 5 | |
| 6 | **Total income (loss).** Add lines 3 through 5 ........................................ ► | | | 6 | 213,986. |

### DEDUCTIONS (SEE INSTRS)

| | | | |
|---|---|---|---|
| 7 | Compensation of officers ........................................ | 7 | 10,000. |
| 8 | Salaries and wages (less employment credits) ........................................ | 8 | 59,077. |
| 9 | Repairs and maintenance ........................................ | 9 | 3,612. |
| 10 | Bad debts ........................................ | 10 | |
| 11 | Rents ........................................ | 11 | 23,100. |
| 12 | Taxes and licenses ........................................ | 12 | 14,365. |
| 13 | Interest ........................................ | 13 | 2. |
| 14 | Depreciation not claimed on Schedule A or elsewhere on return (attach Form 4562) | 14 | 3,497. |
| 15 | Depletion (Do not deduct oil and gas depletion.) ........................................ | 15 | |
| 16 | Advertising ........................................ | 16 | 571. |
| 17 | Pension, profit-sharing, etc, plans ........................................ | 17 | |
| 18 | Employee benefit programs ........................................ | 18 | 440. |
| 19 | Other deductions (attach statement) ...STMT ........................................ | 19 | 90,211. |
| 20 | **Total deductions.** Add lines 7 through 19 ........................................ ► | 20 | 204,875. |
| 21 | **Ordinary business income (loss).** Subtract line 20 from line 5 ........................................ | 21 | 9,111. |

### TAX AND PAYMENTS

| | | | | |
|---|---|---|---|---|
| 22a | Excess net passive income or LIFO recapture tax (see instructions) | 22a | | |
| b | Tax from Schedule D (Form 1120S) | 22b | | |
| c | Add lines 22a and 22b (see instructions for additional taxes) | | 22c | |
| 23a | 2009 estimated tax payments and 2008 overpayment credited to 2009 ...... | 23a | | |
| b | Tax deposited with Form 7004 ........................................ | 23b | 0. | |
| c | Credit for federal tax paid on fuels (attach Form 4136) ................ | 23c | | |
| d | Add lines 23a through 23c ........................................ | | 23d | 0. |
| 24 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ........................................ ► ☐ | | 24 | |
| 25 | Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed ........................................ | | 25 | 0. |
| 26 | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid .............. | | 26 | |
| 27 | Enter amount from line 26 Credited to 2010 estimated tax ◄ Refunded ► | | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Signature of officer | Date | Title PRESIDENT |
|---|---|---|

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer's Use Only**

| Preparer's signature | Date 03/21/10 | Check if self- employed .... ☒ | Preparer's SSN or PTIN P00121724 |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ► | MIQUEL ACCOUNTING SERVICE INC | EIN 65-0972606 | |
| | 5100 S DIXIE HWY STE 10 | | |
| | WEST PALM BEACH          FL 33405-3240 | Phone no. (561) 588-8878 | |

BAA For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.   SPSA0112  12/16/09   Form 1120S (2009)

**EXHIBIT B**

Form 1120S (2009) FIRST LAW GROUP, P.A.    Page 2

## Schedule A    Cost of Goods Sold (see instructions)

| | | |
|---|---|---|
| 1 | Inventory at beginning of year | 1 |
| 2 | Purchases | 2 |
| 3 | Cost of labor | 3 |
| 4 | Additional section 263A costs (attach statement) | 4 |
| 5 | Other costs (attach statement) | 5 |
| 6 | Total. Add lines 1 through 5 | 6 |
| 7 | Inventory at end of year | 7 |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 |

9a Check all methods used for valuing closing inventory:
- (i) ☐ Cost as described in Regulations section 1.471-3
- (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4
- (iii) ☐ Other (Specify method used and attach explanation.) ► _____

b Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) ............................ ► ☐
c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ........................ ► ☐
d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO ........................ | 9d |
e If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? ............... ☐ Yes  ☐ No
f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation ........................ ☐ Yes  ☐ No

## Schedule B    Other Information (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check accounting method:  a ☒ Cash  b ☐ Accrual  c ☐ Other (specify) ► _____ | | |
| 2 | See the instructions and enter the: | | |
| | a Business activity ► ATTORNEY    b Product or service ... ► LEGAL SERVICES | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) If 'Yes,' attach a statement showing: (a) name and employer identification number (EIN), (b) percentage owned, and (c) if 100% owned, was a QSub election made? ........................ | | X |
| 4 | Has this corporation filed, or is it required to file, a return under section 6111 to provide information on any reportable transaction? ........................ | | X |
| 5 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ............... ► ☐ If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 6 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to its basis (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain (defined in section 1374(d)(1)) in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years ........................ ► $ _____ | | |
| 7 | Enter the accumulated earnings and profits of the corporation at the end of the tax year ........ $ _____ | | |
| 8 | Are the corporation's total receipts (see instructions) for the tax year and its total assets at the end of the tax year less than $250,000? If 'Yes,' the corporation is not required to complete Schedules L and M-1 ........................ | | X |

## Schedule K    Shareholders' Pro Rata Share Items

| | | | Total amount |
|---|---|---|---|
| I N C O M E (L O S S) | 1 | Ordinary business income (loss) (page 1, line 21) | 1 | 9,111. |
| | 2 | Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a | Other gross rental income (loss) | 3a | |
| | b | Expenses from other rental activities (attach statement) | 3b | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 | Interest income | 4 | |
| | 5 | Dividends:  a  Ordinary dividends | 5a | |
| | | b  Qualified dividends | 5b | |
| | 6 | Royalties | 6 | |
| | 7 | Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) | 7 | |
| | 8a | Net long-term capital gain (loss) (attach Schedule D (Form 1120S)) | 8a | |
| | b | Collectibles (28%) gain (loss) | 8b | |
| | c | Unrecaptured section 1250 gain (attach statement) | 8c | |
| | 9 | Net section 1231 gain (loss) (attach Form 4797) | 9 | |
| | 10 | Other income (loss) (see instructions) ................... Type ► | 10 | |

Form 1120S (2009)

| | Shareholders' Pro Rata Share Items (continued) | | Total amount |
|---|---|---|---|
| **Deductions** | 11  Section 179 deduction (attach Form 4562) | 11 | |
| | 12a Contributions .................................Cash contribution..(50%)............ | 12a | 225. |
| | b Investment interest expense | 12b | |
| | c Section 59(e)(2) expenditures  (1) Type ▶ _____  (2) Amount ▶ | 12c (2) | |
| | d Other deductions (see instructions) ... Type ▶ | 12d | |
| **Credits** | 13a Low-income housing credit (section 42(j)(5)) | 13a | |
| | b Low-income housing credit (other) | 13b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 13c | |
| | d Other rental real estate credits (see instrs)   Type ▶ | 13d | |
| | e Other rental credits (see instrs)   Type ▶ | 13e | |
| | f Alcohol and cellulosic biofuel fuels credit (attach Form 6478) | 13f | |
| | g Other credits (see instructions) ...... Type ▶ | 13g | |
| **Foreign Transactions** | 14a Name of country or U.S. possession ....... ▶ | | |
| | b Gross income from all sources | 14b | |
| | c Gross income sourced at shareholder level | 14c | |
| | Foreign gross income sourced at corporate level | | |
| | d Passive category | 14d | |
| | e General category | 14e | |
| | f Other (attach statement) | 14f | |
| | Deductions allocated and apportioned at shareholder level | | |
| | g Interest expense | 14g | |
| | h Other | 14h | |
| | Deductions allocated and apportioned at corporate level to foreign source income | | |
| | i Passive category | 14i | |
| | j General category | 14j | |
| | k Other (attach statement) | 14k | |
| | Other information | | |
| | l Total foreign taxes (check one): ▶ ☐ Paid   ☐ Accrued | 14l | |
| | m Reduction in taxes available for credit (attach statement) | 14m | |
| | n Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | 15a Post-1986 depreciation adjustment | 15a | 710. |
| | b Adjusted gain or loss | 15b | |
| | c Depletion (other than oil and gas) | 15c | |
| | d Oil, gas, and geothermal properties — gross income | 15d | |
| | e Oil, gas, and geothermal properties — deductions | 15e | |
| | f Other AMT items (attach statement) | 15f | |
| **Items Affecting Shareholder Basis** | 16a Tax-exempt interest income | 16a | |
| | b Other tax-exempt income | 16b | |
| | c Nondeductible expenses | 16c | 3,729. |
| | d Property distributions | 16d | 4,844. |
| | e Repayment of loans from shareholders | 16e | |
| **Other Information** | 17a Investment income | 17a | |
| | b Investment expenses | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | 0. |
| | d Other items and amounts (attach statement) | | |
| **Reconciliation** | 18  **Income/loss reconciliation.** Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and lines 14l | 18 | 8,886. |

BAA                                                                          Form 1120S (2009)

Form 1120S (2009)  HURST LAW GROUP, P.L.    26-2396929    Page 4

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| Assets | | (a) | (b) | (c) | (d) |
| 1 Cash ............................ | | | 52,776. | | 92,056. |
| 2a Trade notes and accounts receivable ........ | | | | | |
| b Less allowance for bad debts .............. | | | | | |
| 3 Inventories .............................. | | | | | |
| 4 U.S. government obligations ............... | | | | | |
| 5 Tax-exempt securities (see instructions) .... | | | | | |
| 6 Other current assets (attach stmt) ....L..6..St. | | | | | 1,800. |
| 7 Loans to shareholders .................... | | | | | |
| 8 Mortgage and real estate loans .............. | | | | | |
| 9 Other investments (attach statement) .............. | | | | | |
| 10a Buildings and other depreciable assets ...... | | 10,928. | | 10,928. | |
| b Less accumulated depreciation ............. | | 2,186. | 8,742. | 5,683. | 5,245. |
| 11a Depletable assets ...................... | | | | | |
| b Less accumulated depletion .............. | | | | | |
| 12 Land (net of any amortization) ........... | | | | | |
| 13a Intangible assets (amortizable only) ........ | | | | | |
| b Less accumulated amortization ............. | | | | | |
| 14 Other assets (attach stmt) ............... | | | | | |
| 15 Total assets ........................... | | | 61,518. | | 99,101. |
| Liabilities and Shareholders' Equity | | | | | |
| 16 Accounts payable ........................ | | | | | |
| 17 Mortgages, notes, bonds payable in less than 1 year ...... | | | | | |
| 18 Other current liabilities (attach stmt) ..Ln..18.St. | | | | | 2,194. |
| 19 Loans from shareholders ................. | | | 1,565. | | 1,565. |
| 20 Mortgages, notes, bonds payable in 1 year or more .... | | | | | |
| 21 Other liabilities (attach statement) ....Ln..21.St. | | | 53,484. | | 88,560. |
| 22 Capital stock .......................... | | | 600. | | 600. |
| 23 Additional paid-in capital ................. | | | | | |
| 24 Retained earnings ....................... | | | 5,869. | | 6,182. |
| 25 Adjustments to shareholders' equity (att stmt) ........ | | | | | |
| 26 Less cost of treasury stock ............... | | | | | |
| 27 Total liabilities and shareholders' equity ...... | | | 61,518. | | 99,101. |

**Schedule M-1** Reconciliation of Income (Loss) per Books With Income (Loss) per Return
Note: Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more — see instructions

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books ............... | 5,157. | 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | a Tax-exempt interest . $ _ _ _ _ _ _ _ _ | | |
| | | 6 Deductions included on Schedule K, lines 1 through 12, and 14l, not charged against book income this year (itemize): | | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize): | | a Depreciation .... $ _ _ _ _ _ _ _ _ | | |
| a Depreciation ....... $ _ _ _ _ _ _ _ | | | | |
| b Travel and entertainment . $ _ _ _ 3,729. | | | | |
| | 3,729. | 7 Add lines 5 and 6 ....................... | | |
| 4 Add lines 1 through 3 .................... | 8,886. | 8 Income (loss) (Schedule K, ln 18). Ln 4 less ln 7 ... | | 8,886. |

**Schedule M-2** Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year ..................... | 5,869. | | |
| 2 Ordinary income from page 1, line 21 ................. | 9,111. | | |
| 3 Other additions ...................................... | | | |
| 4 Loss from page 1, line 21 ............................ | | | |
| 5 Other reductions .............*..STMT ............... | 3,954. | | |
| 6 Combine lines 1 through 5 ........................... | 11,026. | | |
| 7 Distributions other than dividend distributions ................... | 4,844. | 0. | 0. |
| 8 Balance at end of tax year. Subtract line 7 from line 6 ......... | 6,182. | 0. | 0. |

SPSA0134   12/16/09                                              Form 1120S (2009)

☐ Final K-1   ☐ Amended K-1                                      OMB No. 1545-0130

| Schedule K-1 | **2009** | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|---|

(Form 1120S)

For calendar year 2009, or tax

Department of the Treasury
Internal Revenue Service

year beginning _____ , 2009

ending _____

# Shareholder's Share of Income, Deductions, Credits, etc.  ► See page 2 of form and separate instructions.

| | | | | | |
|---|---|---|---|---|---|
| **1** | Ordinary business income (loss) 9,111. | **13** | Credits | | |
| **2** | Net rental real estate income (loss) | | | | |
| **3** | Other net rental income (loss) | | | | |
| **4** | Interest income | | | | |
| **5a** | Ordinary dividends | | | | |
| **5b** | Qualified dividends | **14** | Foreign transactions | | |
| **6** | Royalties | | | | |
| **7** | Net short-term capital gain (loss) | | | | |
| **8a** | Net long-term capital gain (loss) | | | | |
| **8b** | Collectibles (28%) gain (loss) | | | | |
| **8c** | Unrecaptured section 1250 gain | | | | |
| **9** | Net section 1231 gain (loss) | | | | |
| **10** | Other income (loss) | **15** | Alternative minimum tax (AMT) items A 710. | | |

## Part I   Information About the Corporation

**A** Corporation's employer identification number
26-2356929

**B** Corporation's name, address, city, state, and ZIP code
HURST LAW GROUP, P.L.
5204 10TH AVENUE NO.
GREENACRES, FL 33463

**C** IRS Center where corporation filed return
Ogden, UT  84201-0013

## Part II   Information About the Shareholder

**D** Shareholder's identifying number
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

**E** Shareholder's name, address, city, state, and ZIP code
RONALD A. HURST JR.
P.O. BOX 540262
GREENACRES, FL 33454

**F** Shareholder's percentage of stock
ownership for tax year .................. 100.00000 %

| | | | | |
|---|---|---|---|---|
| **11** | Section 179 deduction | **16** | Items affecting shareholder basis C 3,729. | |
| **12** | Other deductions A 225. | | D 4,844. | |
| | | **17** | Other information | |

F
O
R

I
R
S

U
S
E

O
N
L
Y

*See attached statement for additional information.

BAA  For Paperwork Reduction Act Notice, see Instructions for Form 1120S.                    Schedule K-1 (Form 1120S) 2009

SPSA0412   12/15/09

Form 1120S, Page 1, Line 19
Other Deductions

| | |
|---|---:|
| ACCOUNTING | 2,525. |
| AUTOMOBILE AND TRUCK EXPENSE | 3,752. |
| BANK CHARGES | 245. |
| CREDIT AND COLLECTION COSTS | 590. |
| DUES AND SUBSCRIPTIONS | 2,131. |
| EQUIPMENT RENT | 1,154. |
| GIFTS | 150. |
| INSURANCE | 2,768. |
| LAUNDRY AND CLEANING | 359. |
| LEGAL AND PROFESSIONAL | 986. |
| MEALS AND ENTERTAINMENT (50%) | 3,730. |
| OFFICE EXPENSE | 17,025. |
| OUTSIDE SERVICES | 20,511. |
| PARKING FEES AND TOLLS | 636. |
| PERMITS AND FEES | 150. |
| POSTAGE | 2,563. |
| SECURITY | 559. |
| TELEPHONE | 5,722. |
| TRAINING/CONTINUING EDUCATION | 276. |
| TRAVEL | 1,705. |
| UTILITIES | 3,933. |
| CLIENT FEES/INSURANCE CLAIMS | 9,425. |
| LEASED AUTO | 9,316. |
| Total | 90,211. |

Other Current Assets:
1120S, Schedule L, Line 6

| Other Current Assets: | Beginning of tax year | End of tax year |
|---|---|---:|
| LOAN TO CURTIS | | 1,800. |
| Total | | 1,800. |

Other Current Liabilities:
1120S, Schedule L, Line 18

| Other Current Liabilities: | Beginning of tax year | End of tax year |
|---|---|---:|
| PAYROLL TAXES PAYABLE | | 2,194. |
| Total | | 2,194. |

Other Liabilities:
1120S, Schedule L, Line 21

| Other Liabilities: | Beginning of tax year | End of tax year |
|---|---:|---:|
| TRUST ACCOUNT | 53,484. | 88,560. |

Continued

Other Liabilities:
**1120S, Schedule L, Line 21**

| Other Liabilities: | Beginning of tax year | End of tax year |
| --- | --- | --- |
| Total | 53,484. | 88,560. |

Form 1120S, Page 4, Schedule M-2, Line 5
**Schedule M-2, Other Reductions**

| | | |
| --- | --- | --- |
| CHARITABLE CONTRIBUTIONS | 225. | |
| MEALS AND ENTERTAINMENT | 3,729. | |
| Total | 3,954. | |